*895 OPINION OF THE COURT
Sidney Gribetz, J.
This case presents the issue of the accuracy of translations by court interpreters and its impact on the integrity and orderly progress of judicial proceedings. It is an issue that jurists are frequently sensitive to as many hearings and trials in our multicultural society involve parties or witnesses who do not speak English, and these hearings proceed with the assistance of court-appointed interpreters. While interpreters are used on an almost daily basis in our courts, this issue rarely comes to the forefront to be subject to assessment and review.
In this juvenile delinquency case the respondent was charged with committing various acts which would be crimes if committed by an adult, in connection with the robbery of a Chinese restaurant delivery worker. At the fact-finding hearing, the complainant, who spoke limited English, testified with the aid of a court-appointed Mandarin language interpreter. In the midst of the trial, the Assistant Corporation Counsel alerted the court to alleged errors in translation by the interpreter, and made an oral motion to strike the testimony of the complaining witness because of those alleged errors.
In response, I interrupted the testimony and conducted a hearing on the factual issues raised by the presentment agency’s motion, and then adjourned the matter to enable the presentment agency and the attorney for the respondent to submit written briefs. After due consideration of the testimony at the hearing and the briefs submitted, I denied the motion in an oral ruling issued from the bench. I now write this written decision to clarify and elaborate the reasons for my decision.
At the hearing, the court took the testimony of Assistant Corporation Counsel Brittany Shrader, Esq., and the interpreter, Carol Eng.
Ms. Shrader was not trying this case, but she was sitting in the audience of the courtroom listening to the proceedings. Ms. Shrader testified that she is conversationally fluent in Mandarin Chinese. She majored in East Asian Studies in college and spent a semester of her undergraduate studies in Shanghai where she spoke only Mandarin. Since her college years, she speaks Mandarin with Chinese friends, and in her work in the Corporation Counsel’s office, she has interviewed victims and potential witnesses while speaking in Mandarin.
Ms. Shrader testified that while listening to this fact-finding, she noticed that the court-appointed interpreter was not *896 translating word for word what the witness was saying. She cited one example where in response to a question about being hit from behind, the witness gave a long answer regarding where the perpetrators were situated, and that one in front of him hit him two times in the face; the interpreter stated that the witness did not know who hit him from behind. On another occasion the witness answered “three or four times” and the interpreter stated “two or three times.” Without any specific examples, Ms. Shrader testified that the interpreter paraphrased the witness’s statement rather than reciting the exact words.
While not testified to by Ms. Shrader, the court, with the acknowledgment of both attorneys trying the case, took judicial notice of one occasion earlier in the trial where the interpreter engaged in a long conversation with the witness, rather than simply translating the brief question and reply. And there was another occasion where the interpreter used the word “motorcycle” in her translation of an answer, and the witness himself jumped in and told her he said “bicycle.”
The court-appointed interpreter Carol Eng then testified. She has worked for over 20 years as a freelance per diem court interpreter for the New York State Office of Court Administration and has worked in “thousands” of trials and other court proceedings, in supreme, criminal, and family courts in New York, Bronx, and Queens counties, and her qualifications have never been called to account.
Ms. Eng spoke Cantonese and Taiwanese Chinese since birth, as her native languages, and English since kindergarten. She became conversational in Mandarin because her husband speaks Mandarin. Ms. Eng has no formal training as an interpreter. She stated that many years ago, after she already started working for the courts, she took and passed a civil service test for Cantonese and Mandarin interpreting. “I passed them both, but they lost my Cantonese test.” She did not remember if she took the oath of office as an interpreter pursuant to Judiciary Law § 387.
Under questioning from both attorneys, she claimed that she interpreted the witness’s answers word for word, although admitted that at some points, she had brief difficulties, but eventually translated both the lawyer’s inquiries and the witness responses word for word.
I credit the testimony of both witnesses, Ms. Shrader and Ms. Eng, and I find that there were errors made by the interpreter when interpreting the complainant’s testimony. For example, *897 the interpreter stated motorcycle before being corrected to say bicycle. In another instance the witness answered a question by saying he saw someone three to four times per week, while the interpreter interpreted two to three times. Additionally, at times it appeared that there was a conversation occurring between the interpreter and the complainant, and some statements may have been paraphrased rather than word for word.
Although court interpreters play an important role in our proceedings, there are few statutory requirements, and little case law to give guidance as to the standards to be applied. Judiciary Law § 387 simply requires the interpreter to file an oath of office with the Clerk of the Court. Uniform Rules for Trial Courts (22 NYCRR) § 217.1 (a) provides that
“[i]n all civil and criminal cases, when a court determines that a party or witness, or an interested parent or guardian of a minor party in a Family Court proceeding, is unable to understand or communicate in English to the extent that he or she cannot meaningfully participate in the proceedings, the court shall appoint an interpreter.”
General standards expressed in the limited case law in this area set forth that since the interpreter is the conduit from the witness to the trier of fact, interpretation should be word for word rather than summarized, and there should be no conversation between the witness and the interpreter, no significant differences in the length of dialogue of the witness and the interpreter, and no bias or interest in the proceedings. (See e.g. Matter of James L., 143 AD2d 533 [1988]; see also Pham v Beaver, 445 F Supp 2d 252 [2006]; United States v Joshi, 896 F2d 1303 [1990].)
In the OCA internal Court Interpreter Manual and Code of Ethics, the following “responsibilities” are indicated. Under “Accuracy,” interpreters must faithfully and accurately interpret what is said without embellishment or omission, and there is additional advice for impartiality, confidentiality, proficiency, and professional demeanor. Under “Proficiency” and “Errors,” interpreters must provide professional services only in areas where they can perform accurately, and when in doubt inform the court; and the interpreter must immediately inform the judge of an error, even if perceived after the proceeding has concluded.
OCA has also issued a “benchcard” for judges working with interpreters in the courtroom, alerting judges to assess:
*898 “1. Are there significant differences in the length of interpretation as compared to the original testimony?
“2. Does the individual needing the interpreter appear to be asking questions of the interpreter?
“3. Is the interpreter leading the witness, or trying to influence answers through body language or facial expressions?
“4. Is the interpreter acting in a professional manner?
“5. Is the interpretation being done in the first person?
“6. If the interpreter has a question, does he or she address the court in the third-person?”
The benchcard also suggests that judges individually swear in court interpreters, a procedure which I admittedly did not follow here.
Accordingly, because Ms. Eng did not interpret word for word on one or two occasions, engaged in conversations with the witness, and erred in her translation of one or two words, I find that Ms. Eng violated the standards for court interpreters in these regards. However, the bulk of her work, in the 30 to 40 minutes of testimony, did meet proper standards, and the individual errors were isolated instances.
In assessing the remedy, if any, necessary to be imposed, while this court concedes that there have been some errors on the part of the interpreter, at issue is the extent of the errors, and what impact, if any, the errors have.
The case law in this area usually arises in the context of a defendant challenging a conviction on appeal, in distinction to the instant case, where the prosecutor has made a motion in the midst of trial to strike the testimony, and the court has interrupted the trial to rule on the motion. Nevertheless, that law is instructive. In People v Singleton (59 AD3d 1131 [2009]), the court held that while there were some errors in interpretation, the defendant failed to establish that he “was prejudiced by those errors,” and the conviction was affirmed. In People v Dat Pham (283 AD2d 952 [2001]), also, while there were some errors in the translation, the juiy was informed of the errors, and the conviction was affirmed because the defendant did not show that he was seriously prejudiced. Other cases have held that the failure of the defendant to object as to the adequacy of the translation during trial or otherwise preserve proof of any seri *899 ous error does not provide the basis for a reversal (e.g. People v Ko, 133 AD2d 850 [1987]; People v Rolston, 109 AD2d 854 [1985]).
Also important to note, all of the cases cited by both parties as well as the court, including those referenced above, involve a defendant who claimed prejudice by the errors of the interpreter. The main concern for the court in assessing the fairness of a trial is the due process rights of the defendant. Here, the respondent is in support of keeping the testimony of the complainant, notwithstanding the errors of the interpreter, so to the extent that his due process rights are implicated, he has waived them.
To be sure, both the prosecutor, and the court system itself, are entitled to an integrity of the orderly process and procedures of our system, and the fact that the respondent has not objected, standing alone, does not require that no remedy be made to ensure the orderly progress of the trial. To the extent possible, trial courts should monitor the professionalism and accuracy of court interpreters. In cases where serious or pervasive errors are made, remedial action should be taken.
However, here the errors made were relatively minor and few, and did not affect the main aspects of the witness’s testimony, and this court, as the trier of fact in this family court juvenile delinquency case, is able to discern the testimony notwithstanding these errors. Therefore, there has been no major prejudice to any party, and the drastic remedy requested by the presentment agency, that of striking the testimony and starting anew, is denied, as not warranted under the circumstances of this case.
The trial will resume with the continued testimony of the witness, with a different Mandarin interpreter to be supplied by the Clerk of the Court and our interpreter service unit.